UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

VLADIMIR KRULL,

                                    Plaintiff,

                v.                                                    9:19-CV-0142
                                                                     (TJM/CFH)

REBECCA OEY, et al.,

                                    Defendants.
_____

APPEARANCES:

VLADIMIR KRULL
17-R-0877
Plaintiff, Pro se
Clinton Correctional Facility
P.O. Box 2000
Dannemora, NY 12929

THOMAS J. MCAVOY
Senior United States District Judge

**DECISION AND ORDER**

**I.     INTRODUCTION**

        The Clerk has sent to the Court for review a Complaint filed by pro se plaintiff Vladimir

Krull ("Plaintiff") pursuant to 42 U.S.C. § 1983 ("Section 1983"), asserting claims arising out

of his confinement in the custody of the New York State Department of Corrections and

Community Supervision ("DOCCS") at Clinton Correctional Facility ("Clinton C.F.").  Dkt. No.

1 ("Compl.").  Plaintiff has not paid the filing fee for this action and seeks leave to proceed in

forma pauperis.  Dkt. No. 2 ("IFP Application").  Plaintiff also filed a motion for the

appointment of counsel and for preliminary injunctive relief.  Dkt. Nos. 4 and 5.

## II.    IFP APPLICATION

"28 U.S.C. § 1915 permits an indigent litigant to commence an action in a federal

court without prepayment of the filing fee that would ordinarily be charged." *Cash v.*

*Bernstein*, No. 09-CV-1922, 2010 WL 5185047, at *1 (S.D.N.Y. Oct. 26, 2010).[1]  "Although

an indigent, incarcerated individual need not prepay the filing fee at the time of filing, he must

subsequently pay the fee, to the extent he is able to do so, through periodic withdrawals from

his inmate accounts." *Id*. (citing 28 U.S.C. § 1915(b) and *Harris v. City of New York*, 607

F.3d 18, 21 (2d Cir. 2010)).

Upon review of Plaintiff's IFP Application, the Court finds that he has demonstrated

sufficient economic need.  *See* 28 U.S.C. § 1915(a)(2).  Plaintiff has also filed the inmate

authorization form required in this District.  *See* Dkt. No. 3.  Accordingly, the Court grants

Plaintiff's IFP Application.

## III.   SUFFICIENCY OF THE COMPLAINT

### A.    Governing Legal Standard

Section 1915(e) directs that, when a plaintiff seeks to proceed in forma pauperis, "(2) .

. . the court shall dismiss the case at any time if the court determines that – . . . (B) the action

. . . (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii)

seeks monetary relief against a defendant who is immune from such relief."  28 U.S.C. §

---

[1]      Section 1915(g) prohibits a prisoner from proceeding in forma pauperis where, absent a
showing of "imminent danger of serious physical injury," a prisoner has filed three or more actions that were
subsequently dismissed as frivolous, malicious, or failing to state a claim upon which relief may be granted.  *See*
28 U.S.C. § 1915(g).  The Court has reviewed plaintiff's litigation history on the Federal Judiciary's Public Access
to Court Electronic Records ("PACER") Service.  *See* http://pacer.uspci.uscourts.gov.  It does not appear from
that review that Plaintiff had accumulated three strikes for purposes of 28 U.S.C. § 1915(g) as of the date this
action was commenced.

1915(e)(2)(B).[2]  Thus, even if a plaintiff meets the financial criteria to commence an action in

forma pauperis, it is the court's responsibility to determine whether the plaintiff may properly

maintain the complaint that he filed in this District before the court may permit the plaintiff to

proceed with this action in forma pauperis.  *See id*.

Similarly, under 28 U.S.C. § 1915A, a court must review any "complaint in a civil

action in which a prisoner seeks redress from a governmental entity or officer or employee of

a governmental entity" and must "identify cognizable claims or dismiss the complaint, or any

portion of the complaint, if the complaint . . . is frivolous, malicious, or fails to state a claim

upon which relief may be granted; or . . . seeks monetary relief from a defendant who is

immune from such relief."  28 U.S.C. § 1915A; *see also Carr v. Dvorin*, 171 F.3d 115, 116

(2d Cir. 1999) (per curiam) (Section 1915A applies to all actions brought by prisoners against

government officials even when plaintiff paid the filing fee); *Abbas v. Dixon*, 480 F.3d 636,

639 (2d Cir. 2007) (stating that both sections 1915 and 1915A are available to evaluate

prisoner pro se complaints).

Additionally, when reviewing a complaint, the court may also look to the Federal Rules

of Civil Procedure.  Rule 8 of the Federal Rules of Civil Procedure provides that a pleading

which sets forth a claim for relief shall contain, *inter alia,* "a short and plain statement of the

claim showing that the pleader is entitled to relief."  *See* Fed. R. Civ. P. 8(a)(2).  The purpose

of Rule 8 "is to give fair notice of the claim being asserted so as to permit the adverse party

the opportunity to file a responsive answer, prepare an adequate defense and determine

whether the doctrine of res judicata is applicable."  *Hudson v. Artuz*, No. 95-CV-4768, 1998

---

[2]       To determine whether an action is frivolous, a court must look to see whether the complaint
"lacks an arguable basis either in law or in fact."  *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).

WL 832708, at *1 (S.D.N.Y. Nov. 30, 1998) (quoting *Powell v. Marine Midland Bank*, 162 F.R.D. 15, 16 (N.D.N.Y. 1995) (McAvoy, C.J.) (other citations omitted)).

A court should not dismiss a complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While the court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. (citing *Twombly*, 550 U.S. at 555). Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.*

## B. Summary of the Complaint[3]

The following facts are set forth as alleged by Plaintiff in his Complaint.

In 2017, Plaintiff was convicted of rape and a criminal sexual act in the second degree. *See* http://nysdoccslookup.doccs.ny.gov (last visited March 8, 2019). During his trial, Plaintiff testified in support of his defense and maintained his innocence. Compl. at 10.

In June 2017, Plaintiff's Offender Rehabilitation Coordinator ("ORC")[4] asked if he wished to participate in the Sex Offender Counseling and Treatment Program ("SOCTP").

---

[3]     The Complaint includes exhibits. *See* Dkt. No. 1-1. To the extent that the exhibits are relevant to the incidents described in the Complaint, the Court will consider the Complaint as well as any documents attached as exhibits. *See Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991) (the complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference).

[4]     Plaintiff does not identify the ORC or name him/her as a defendant in the action.

4

Compl. at 5.  The ORC informed Plaintiff that, if he refused to participate in the "voluntary program," he would receive a disciplinary ticket, loss privileges, be placed in keeplock, lose good time credits, and assigned points under the Sex Offender Registration Act ("SORA") Risk Assessment Instrument ("RAI")[5], upon his release from custody.  *Id.*  Plaintiff agreed to attend classes because he was "assured" that his participation was not condition upon an admission of guilt to any crimes.  *Id.* at 5-6.  Plaintiff was classified as "low risk" and assigned to the six-month program.  *Id.*; Dkt. No. 1-1 at 2.

In January 2018, Plaintiff entered the program.  Compl. at 6.  While in the program, Plaintiff attended sessions three times a week, actively participated in group discussions, and completed all assignments.  *Id.* at 6.  On March 9, 2018 and May 2, 2018, Plaintiff met with defendant Rebecca Oey ("Oey"), a Senior Offender Rehabilitation Coordinator ("SORC") to evaluate his progress.  *Id.*  Plaintiff was told that he was making excellent progress and his written evaluation indicated that he "attends group and will participate when prompted. Continues to deny sex offense."  Dkt. No. 1-1 at 3, 5.  During the evaluations, Plaintiff and Oey discussed his crimes, including his arrest and conviction.  Compl. at 6.  At all times during their discussions, Plaintiff maintained his innocence and told Oey that he testified in his own defense at his trial.  *Id.* at 6, 7; Dkt. No. 1-1 at 14-16.  During the evaluations, Oey did not tell Plaintiff that his refusal to admit guilt would be an impediment to completing the program.  Compl. at 6.

The SOCTP Guidelines in effect at the time Plaintiff participated in the program provided, in relevant part:

---

[5]        The RAI uses fifteen enumerated risk factors to tally the sex offender's risk factor score.

Most often, an inmate's legal concerns are expressed in the context of the Fifth Amendment right to be free from compelled self-incrimination. Accordingly, an inmate is not required to admit the commission of a particular crime, whether it resulted in the present commitment or not. In order to permit open discussion for the most effective treatment, Department policy provides that no written or oral statement made by a program participant in conjunction with treatment services rendered in connection with the SOCTP may be used against the inmate in any subsequent criminal proceeding in accordance with the Limits of Confidentiality, Partial Waiver of Confidentiality and Acknowledgment form. In addition, no program participant may reveal in any subsequent criminal proceeding any information disclosed by another inmate in any group session or otherwise disclosed in conjunction with counseling and treatment services rendered as part of the SOCTP.

For successful program participation, the inmate may discuss his or her behavior in general terms without providing the full names of victims, without disclosing the exact dates, times, and places (e.g., the city, town, etc.) of various sexual offending behavior, and without admitting to any specific crime or the violation of any specific section of the Penal Law (e.g., rape in the first degree, criminal sexual act in the third degree, sexual abuse in the second degree, etc.). Nonetheless, the inmate must openly and honestly discuss the behavior that resulted in his or her incarceration and/or referral to the program, demonstrate acceptance of responsibility for the conduct that resulted in his or her criminal conviction, and demonstrate an understanding of his or her sexual offending behavior and cycle of abuse.[6]

*See* Dkt. No. 1-1 at 27.

On June 18, 2018, Plaintiff met with Oey. Compl. at 6; Dkt. No. 1-1 at 8. Oey demanded that Plaintiff admit guilt or face expulsion from the program, a loss of good time credits, and additional SORA points. Compl. at 6-7. Plaintiff reiterated to Oey that he was

---

[6] *See* http://www.doccs.ny.gov/ProgramServices/SOCTP_Procedures_and_Guidelines.pdf (last visited March 9, 2019).

6

innocent. *Id*. at 7. When Plaintiff told Oey that SOCTP Guidelines did not require him to admit guilt, Oey responded, "You are wrong, you have to accept responsibility for your crimes." *Id*. On June 18, 2018, Oey issued a "Referral and Recommendation" indicating that Plaintiff was an "unsatisfactory" participant and failed to "respond favorable to treatment interventions." Dkt. No. 1-1 at 8. Plaintiff was removed him from the SOCTP.[7] Compl. at 7-8.

On June 21, 2018, Plaintiff filed a grievance challenging his removal from the program. Compl. at 9. On July 5, 2018, the Inmate Grievance Resolution Committee denied his grievance finding that Plaintiff "was removed from SOCTP by Treatment Plan Review Committee for failure to respond favorable to treatments." *Id*.; Dkt. No. 1-1 at 12.

Plaintiff's earliest possible release date (or Conditional Release date) is August 20, 2019. Dkt. No. 5-3 at 28. Plaintiff's maximum expiration date is January 26, 2020. *Id*.

Construing the Complaint liberally[8], Plaintiff asserts claims for violations of his Fifth and Fourteenth Amendment rights. *See* Compl. at 10-18. In addition to Oey, Plaintiff names Commissioner Anthony J. Annucci ("Annucci"), Director of Guidance and Counseling Megan MacTavish ("MacTavish"), and Deputy Commissioner Jeffrey McKoy ("McKoy"), as defendants. Plaintiff seeks a declaratory judgment and injunctive relief enjoining defendants

---

[7] At the time Plaintiff was removed from the program, an appeal of his criminal conviction was pending. *See* Compl. at 11.

[8] The Court is mindful of the Second Circuit's instruction that a pleading by a pro se litigant must be construed liberally and interpreted to raise the strongest arguments that it suggests. *See, e.g., Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008) ("On occasions too numerous to count, we have reminded district courts" that a pro se plaintiff's pleadings must be construed liberally); *Phillips v. Girdich*, 408 F.3d 124, 130 (2d Cir. 2005) ("We leave it for the district court to determine what other claims, if any, [plaintiff] has raised. In so doing, the court's imagination should be limited only by [plaintiff's] factual allegations, not by the legal claims set out in his pleadings."); *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994) ("[W]e read [a pro se litigant's] supporting papers liberally, and will interpret them to raise the strongest arguments that they suggest.").

and the New York State Board of Examiners of Sex Offenders from adding points to Plaintiff's SORA RAI and from ordering or recommending that Plaintiff participate in any future SOCTP that requires him to accept responsibility for crimes he did not commit. *See id.* at 22-24. For a complete statement of Plaintiff's claims and the facts he relies on in support of those claims, reference is made to the Complaint.[9]

## C.    Nature of Action

Plaintiff seeks relief pursuant to 42 U.S.C. § 1983 ("Section 1983"), which establishes a cause of action for "'the deprivation of any rights, privileges, or immunities secured by the Constitution and laws' of the United States." *Wilder v. Virginia Hosp. Ass'n*, 496 U.S. 498, 508 (1990)); *see also Myers v. Wollowitz*, No. 95-CV-0272, 1995 WL 236245, at *2 (N.D.N.Y. Apr. 10, 1995) (McAvoy, C.J.) (finding that "[Section] 1983 is the vehicle by which individuals may seek redress for alleged violations of their constitutional rights"). "Section 1983 itself creates no substantive rights, [but] . . . only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James,* 13 F.3d 515, 519 (2d Cir. 1993).

The Court will construe the allegations in the Complaint with the utmost leniency. *See*, *e.g.*, *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (holding that a pro se litigant's complaint is to be held "to less stringent standards than formal pleadings drafted by lawyers.").

---

[9]    To the extent that the Complaint could be read to include a claim based upon "threats" of consequences if Plaintiff failed to agree to participate in the program, that claim is dismissed for failure to plead that any named defendant was personally involved in the alleged threat. *See Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) ("It is well settled that 'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.' ") (quoting *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991)); *see also Austin v. Pappas*, No. 04-CV-7263, 2008 WL 857528, at *2 (S.D.N.Y. Mar. 31, 2008) ("[A] Section 1983 plaintiff must 'allege a tangible connection between the acts of the defendant and the injuries suffered.' ") (quoting *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986)) (other citation omitted).

## IV.    ANALYSIS

### A.    Fifth Amendment

Plaintiff claims that Defendants violated his Fifth Amendment rights when they threatened him with loss of good time, additional points to his SORA RAI, and an extended term of incarceration, if he refused to accept responsibility for crimes he claims he did not commit.  *See* Compl. at 10.  Plaintiff argues, if he accepted responsibility for the crimes, he would subject himself to perjury charges and the statement would be used against him in his pending appeal.  *See id*. at 10-11.

The Fifth Amendment's privilege against self-incrimination, which applies to the states via the Fourteenth Amendment, provides that "[n]o person ... shall be compelled in any criminal case to be a witness against himself."  U.S. Const. amend. V.  The issue of whether the Fifth Amendment privilege is violated by a prison SOTP requiring participants to admit responsibility has been addressed by the Supreme Court in *McKune v. Lile*, 536 U.S. 24, 30 (2002).  In *McKune*, the Court held that the compulsion element of a self-incrimination claim was not violated because the penalty faced by inmates that failed to cooperate with the program, i.e., transfer to a less desirable unit, was not "atypical and significant hardships." *Id*. at 37-38 (citing *Sandin v. Conner*, 515 U.S. 472, 484 (1995)).  In *Edwards v. Goord*, 362 F. App'x 195 (2d Cir. 2010), the Second Circuit affirmed the judgment of the district court extending the *McKune* holding to sanctions including the loss of good time credits.  *Id.* at 198-99.  "It is by now fairly well settled that risking the loss of good time credits or jeopardizing the chance for parole, alone, does not qualify as sufficiently compulsive to meet the test."  *McChesney v. Hogan*, No. 6:08-CV-1290 NAM/DEP, 2010 WL 1027443, at *7

9

(N.D.N.Y. Feb. 26, 2010), *adopted*, 2010 WL 1037957 (N.D.N.Y. Mar. 18, 2010).

Here, Plaintiff exercised his right to refuse to admit responsibility.  In the Complaint, he does not plead that he admitted guilt, and does not allege that he was ever placed under oath or "exposed to" perjury charges.  Accordingly, the Court finds that Plaintiff's constitutional rights were not violated because he did not make any statement during the program that was actually used against him at a later criminal proceeding.  *See Adams v. Annucci*, No. 17-CV-3794, 2018 WL 4608216, at *9 (S.D.N.Y. Sept. 25, 2018) (holding that because the plaintiff was "faced only with the choice between forgoing the potential for an earlier Conditional Release date through accumulation of Good Time Credits - something which he is not constitutionally entitled - or admitting responsibility only for this crime of conviction, his Fifth Amendment rights were not violated"); *see also Mitchner v. Shelton*, No. 07-3173, 2009 WL 274224, at *3 (D. Kan. Jan. 26, 2009) (dismissing Fifth Amendment claims; the plaintiff was terminated from the program because he "would not be coerced to" admit guilt while his criminal appeal was pending).

Accordingly, Plaintiff's Fifth Amendment claim is dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

**B.    Due Process**[10]

**1.    Procedural Due Process**

---

[10]    At this juncture, due to the nature of the relief sought, *Heck v. Humphrey* does not bar Plaintiff from proceeding.  *See Neal v. Shimoda*, 131 F.3d 818, 824 (9th Cir. 1997) ("The parole board would still have the authority to deny the inmates' requests for parole on the basis of any of the grounds presently available to it in evaluating such a request.").  This finding does not preclude Defendants from presenting *Heck* arguments at a later date.

Plaintiff claims that he was not provided with notice or an opportunity to be heard before he was removed from the SOCTP. *See* Compl. at 16. To successfully state a Fourteenth Amendment claim for denial of due process, a plaintiff must show that he both (1) possessed an actual liberty interest, and (2) was deprived of that interest without being afforded sufficient process. *See Ortiz v. McBride*, 380 F.3d 649, 654 (2d Cir. 2004); *Tellier v. Fields,* 280 F.3d 69, 79-80 (2d Cir. 2000); *Hynes v. Squillace*, 143 F.3d 653, 658 (2d Cir. 1998).

Courts in this Circuit have consistently held that there is no protected liberty interest in both the placement in, and removal from prison programs. *See Mills v. Fischer*, No. 9:11-CV-0986 (DNH/CFH), 2013 WL 550731, at *7 (N.D.N.Y. Jan. 2, 2013); *see also Allen v. New York*, No. 9:05-CV-1613 (NAM/GJD), 2006 WL 2864951, at *1 (N.D.N.Y. Oct. 5, 2006) ("It is well-settled that inmates do not enjoy the constitutional right to participate in particular programs or to parole release.") (citations omitted); *see Nieves v. Prack*, No. 6:15-CV-6101, 2016 WL 1165820, at *4 (W.D.N.Y. March 24, 2016) ("[Plaintiff's] claim that his inability . . . to participate in various educational, vocational, rehabilitative or self-help programs might have hindered his ability to receive an early parole or release is . . . speculative and fails to allege interference with a protected liberty interest.") (citations omitted). As presently plead, the Compliant does not suggest that Plaintiff suffered from a deprivation of any liberty interest and thus, Plaintiff's procedural due process claims based upon the decision to remove him from the SOCTP, are dismissed without prejudice. *See Blake v. Fischer*, No. 09-CV-266 (DNH/DRH), 2010 WL 2522198, at *10 (N.D.N.Y. Mar. 5, 2010) *adopted*, 2010 WL 2521978 (N.D.N.Y. June 15, 2010) (collecting cases) ("[C]ourts within the Second Circuit appear to be

reaching a consensus that recommendations for sex offender classification and programming do not trigger due process rights."); *see also Pruitt v. Heimgartner*, 620 F. App'x 653, 657 (10th Cir. 2015) (citing *Moody v. Daggett*, 429 U.S. 78, 88 n. 9 (1976) (holding that prison officials have "full discretion to control" "eligibility for rehabilitative programs"and that these programs do not implicate any "constitutional entitlement")); *see also Sherratt v. Utah Dep't of Corrs.*, 545 F. App'x 744, 749 (10th Cir. 2013) (finding no due process violation because the plaintiff chose not to participate in the program).

Plaintiff claims that his removal will "also infringe" on his "constitutionally protected liberty interest in not being assigned a higher than appropriate SORA level." *See* Compl. at 17. Specifically, Plaintiff claims he will be classified as a "Level Two" sex offender rather than "Level One."[11] *See id.* at 12. Because Plaintiff has not yet been assigned a SORA score, these due process claims are not ripe for adjudication. *See Peterson v. Reinke*, No. 1:14-CV-00477, 2017 WL 1138135, at *5 (D. Idaho Mar. 27, 2017) ("Plaintiff has not yet been deprived of a liberty interest, because he has not been required to register as a sex offender, which potentially raises issues of standing or ripeness."); *see also Adams*, 2018 WL 4608216, at *6 (holding that the plaintiff did not have a cognizable liberty interest in good time credits that were not vested or that he had not yet earned).

Accordingly, Plaintiff's Fourteenth Amendment procedural due process claim is dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### 2. Substantive Due Process

---

[11]     Plaintiff claims that a Level Two restrictions involve: mandatory community notification, public display of offender's photograph, and personal information accessible on the internet. *See* Dkt. No. 5-3 at 27.

Plaintiff claims that DOCCS' "blanket policy" of grouping offenders who plead guilty to their crimes with offenders who "categorically denied committing the crimes they were charge with," violates his right to substantive due process. *See* Compl. at 17-18. "Substantive due process protects individuals against government action that is arbitrary, conscience-shocking, or oppressive in a constitutional sense . . . but not against government action that is 'incorrect or ill-advised.' " *Lowrance v. Achtyl*, 20 F.3d 529, 537 (2d Cir.1994) (internal quotation marks and citations omitted). "To establish a violation of substantive due process rights, a plaintiff must demonstrate that the state action was 'so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience.' " *Okin v. Village of Cornwall–On–Hudson Police Dep't*, 577 F.3d 415, 431 (2d Cir. 2009) (quoting *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 847 n. 8 (1998)). "Very few conditions of prison life are 'shocking' enough to violate a prisoner's right to substantive due process. In *Sandin v. Conner*, the Supreme Court provided only two examples: the transfer to a mental hospital and the involuntary administration of psychotropic drugs." *Samms v. Fischer*, No. 10–CV–349 (GTS/GHL), 2011 WL 3876528, at *12 (N.D.N.Y. Mar.25, 2011) (citations omitted).

As discussed *supra*, Plaintiff does not have a constitutional right to prison programming. Accordingly, Plaintiff's substantive due process claims are dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim. *See Richards v. Goord*, No. 9:04-CV-1433 (LEK/RFT), 2007 WL 201109, at *12 (N.D.N.Y. Jan. 23, 2007) (dismissing substantive due process claims because the plaintiff did not have a fundamental right to substance abuse programming); see also *Blake*, 2010 WL 2522198, at *13 (holding that enrollment in sex offender programs was not "arbitrary,

conscience-shocking, or oppressive, but related to a legitimate penological purpose).

### 3. Vagueness

Plaintiff claims that portions of the SOCTP Guidelines are unconstitutionally vague. *See* Compl. at 18. To wit, Plaintiff claims that "accepting responsibility for a crime and admitting the commission of a crime are [ ] analogous" and contradictory such that a person of "ordinary intelligence" could not reconcile the statements. *See id.* at 19.

"The void for vagueness doctrine holds that a statute is unconstitutional if it is so vague that it fails to provide notice to average individuals of prohibited conduct or fails to provide minimal guidelines such that arbitrary or discriminatory enforcement of the statute ensues." *Kolender v. Lawson*, 461 U.S. 352, 357–58 (1983). "[A] noncriminal statute is unconstitutionally vague under the due process clause [. . . ] when its language does not convey sufficiently definite warning as to the proscribed conduct when measured by common understanding or practice." *Reynolds v. Wagner*, 128 F.3d 166, 182 (3d Cir. 1997) (citation omitted). "[T]he policy must be so vague as to amount to the absence of any real policy or statute." *Id*. (citation omitted).

In this case, the Guidelines are neither vague nor open to multiple interpretations. The Guidelines provide, "an inmate is not required to admit the commission of a particular crime[.]" Dkt. No. 1-1 at 27. Furthermore, even if it could be said that such regulations were vague, Plaintiff alleges that "[a] fellow inmate who was removed from the same SOCTP class as the Plaintiff under the same exact circumstances has already had all of his good time credits denied. These explicit warnings and threats leave no room for ambiguity, misunderstanding or speculation[.]" Dkt. No. 5-3 at 11-12. Therefore, it was clear to him

that refusing to accept responsibility for his crimes would result in termination from the program. Thus, the underlying reasoning for such constitutional challenges has also not been offended.

Accordingly, Plaintiff's this claim is dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

**D.    Equal Protection**

The Fourteenth Amendment's Equal Protection Clause mandates equal treatment under the law.  Essential to that protection is the guarantee that similarly situated persons be treated equally.  *City of Cleburne, Tex. v. Cleburne Living Ctr*., 473 U.S. 432, 439 (1985).  "In order to establish an equal protection violation, the plaintiffs must show that they were treated differently than other people in similar circumstances and must establish that such unequal treatment was the result of intentional and purposeful discrimination."  *Myers v. Barrett*, No. 95-CV-1534 (RSP/GJD), 1997 WL 151770, at *3 (N.D.N.Y. Mar. 28, 1997 (citation omitted).  In addition, a valid equal protection claim may be brought by a "class of one," "where the plaintiff alleges that she [or he] has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000); *Neilson v. D'Angelis*, 409 F.3d 100, 105 (2d Cir. 2005).

Here, the Complaint lacks any facts suggesting that Plaintiff was treated differently that a similarly situated inmate.  Plaintiff's vague and conclusory allegations are insufficient to plausibly suggest an equal protection violation. *See Byng v. Delta Recovery Servs., LLC*.,

15

No. 9:13-CV-0733 (MAD/ATB), 2013 WL 3897485, at *15, n. 5 (N.D.N.Y. July 29, 2013) (holding that Attica inmate alleged no facts in the complaint to indicate he was similarly situated to any one or that someone else was treated differently than he was); *see also Barnes v. Henderson*, 490 F. Supp. 2d 313, 318 (W.D.N.Y. 2007) (dismissing the equal protection claim because the plaintiff did not identify any similarly situated inmates who were treated differently from him, "much less shown an 'extremely high' level of similarity between them").  Accordingly, Plaintiff's Fourteenth Amendment Equal Protection claims are dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### E.    Declaratory and Injunctive Relief

*In Ex Parte Young*, 209 U.S. 123 (1908), the Supreme Court established an exception to state sovereign immunity in federal actions where an individual brings an action seeking injunctive relief against a state official for an ongoing violation of law or the Constitution. Under this doctrine, a suit may proceed against a state official in his or her official capacity, notwithstanding the Eleventh Amendment, when a plaintiff "(a) alleges an ongoing violation of federal law and (b) seeks relief properly characterized as prospective."  *See In re Deposit Ins. Agency*, 482 F.3d 612, 618 (2d Cir. 2007) (quotations and citations omitted); *see also Santiago v. New York State Dep't of Corr. Serv*., 945 F.2d 25, 32 (2d Cir. 1991) (holding that such claims, however, cannot be brought directly against the state, or a state agency, but only against state officials in their official capacities); *see also Inside Connect, Inc. v. Fischer*, No. 13-CV-1138, 2014 WL 2933221, at *7 (S.D.N.Y. June 30, 2014) (dismissing the plaintiff's requests for declaratory judgment related to the defendants' policy of refusing delivery of

Inmate News because the defendants were no longer refusing to deliver Inmate News) (citing *Green v. Mansour*, 474 U.S. 64, 68 (1985)).  "[I]n order to warrant the court's consideration, the plaintiff must be seeking prospective relief from an 'ongoing violation of federal law' which affects him directly, as opposed to others." *Ruggiero v. Brian Fischer, Comm'r, No.* 15-CV-00962, 2017 WL 6999859, at *2 (W.D.N.Y. Aug. 25, 2017), *report and recommendation adopted sub nom*., 2018 WL 488949 (W.D.N.Y. Jan. 20, 2018) (citations omitted).

Here, because the claims for which injunctive and declaratory relief is sought are dismissed, Plaintiff's requests for said relief are also dismissed.  *See Spiteri v. Russo*, No. 12-CV-2780, 2013 WL 4806960, at *44 (E.D.N.Y. Sept. 7, 2013), *aff'd sub nom. Spiteri v. Camacho*, 622 F. App'x 9 (2d Cir. 2015); *see also Rossi v. Fishcer*, No. 13-CV-3167, 2015 WL 769551, at *15 (S.D.N.Y. Feb. 24, 2015).

## V.      MOTION FOR APPOINTMENT OF COUNSEL

Plaintiffs bringing civil actions have no constitutional right to the appointment of counsel.  *See, e.g., United States v. Coven*, 662 F.2d 162, 176 (2d Cir. 1981).  However, pursuant to 28 U.S.C. § 1915(e), the court may request an attorney to represent an indigent party. 28 U.S.C. § 1915(e)(1) (authorizing the court to "request an attorney to represent any person unable to afford counsel.").[12]  Courts cannot utilize a bright-line test in determining whether counsel should be appointed on behalf of an indigent party.  *Hendricks v. Coughlin*, 114 F.3d 390, 392-93 (2d Cir. 1997).  Instead, a number of factors must be carefully

---

[12]      Actual appointment of counsel is contingent upon the availability of pro bono counsel to accept an appointment.  "If no [one] agrees to represent the plaintiff, there is nothing more the Court can do." *Rashid v. McGraw*, No. 01CIV10996, 2002 WL 31427349, at *1 n.1 (S.D.N.Y. Oct. 29, 2002).

considered by the court in ruling upon such a motion:

> [The Court] should first determine whether the indigent's position seems likely to be of substance. If the claim meets this threshold requirement, the court should then consider the indigent's ability to investigate the crucial facts, whether conflicting evidence implicating the need for cross examination will be the major proof presented to the fact finder, the indigent's ability to present the case, the complexity of the legal issues and any special reason in that case why appointment of counsel would be more likely to lead to a just determination.

*Terminate Control Corp. v. Horowitz*, 28 F.3d 1335, 1341 (2d Cir. 1994) (quoting *Hodge v. Police Officers*, 802 F.2d 58, 61 (2d Cir. 1986)) (internal quotation marks omitted). This is not to say that all, or indeed any, of these factors are controlling in a particular case. Rather, each case must be decided on its own facts. *Velasquez v. O'Keefe*, No. 93-CV-1449 (TJM) 899 F.Supp. 972, 974 (N.D.N.Y. Oct. 16, 1995) (citing *Hodge*, 802 F.2d at 621). The Court must consider the issue of appointment carefully because "every assignment of a volunteer lawyer to an undeserving client deprives society of a volunteer lawyer available for a deserving cause."[13] *Cooper v. A. Sargenti Co., Inc.*, 877 F.2d 170, 172 (2d Cir. 1989).

In the present case, the Court has found that the Complaint is insufficient and that he must file an amended pleading for this action to proceed. Since Plaintiff has failed to establish that his claim is likely to be of substance, the Court denies his motion for appointment of counsel without prejudice. After the Court has accepted an amended complaint for filing, defendants have responded to the allegations in Plaintiff's amended complaint, and the parties have undertaken discovery, Plaintiff may choose to file a new

---

[13] The court is authorized only to "request an attorney to represent any person unable to afford counsel." 28 U.S.C. § 1915(e)(1); *see Mallard v. United States District Court*, 490 U.S. 296, 298 (1989). Section 1915(e) does not, however, permit a federal court to require an unwilling attorney to represent an indigent litigant in a civil case. *See Mallard*, 490 U.S. at 298, 309.

motion for appointment of counsel, at which time the Court may be better able to determine whether such appointment is warranted in this case. Thus, Plaintiff's motion for the appointment of counsel is denied without prejudice.

## VI.  MOTION FOR PRELIMINARY INJUNCTIVE RELIEF

Plaintiff seeks preliminary injunctive relief enjoining Defendants from adding points to his SORA RAI, denying his good time credits, and denying Plaintiff his Earned Eligibility Program Certificate. Compl. at 22; Dkt. No. 5.

Preliminary injunctive relief "is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Moore v. Consol. Edison Co. of N.Y.*, 409 F.3d 506, 510 (2d Cir. 2005) (quoting *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997)). "The district court has wide discretion in determining whether to grant a preliminary injunction." *Id.* at 511. To succeed on a motion for preliminary injunctive relief, a plaintiff must demonstrate irreparable harm and either a substantial likelihood of success on the merits of the claim, or sufficiently serious questions going to the merits and a balance of hardships tipping decidedly in his favor. *Citigroup Global Markets, Inc. V. VCG Special Opportunities Master Fund Ltd.*, 598 F.3d 30, 35 (2d Cir. 2010). However, when the moving party seeks a "mandatory preliminary injunction that alters the status quo by commanding a positive act," the burden is even higher. *Cacchillo v. Insmed, Inc.*, 638 F.3d 401, 405-06 (2d Cir. 2011). "A mandatory preliminary injunction 'should issue only upon a clear showing that the moving party is entitled to the relief requested, or where extreme or very serious damage will result from a denial of preliminary relief.' " *Id.* (quoting *Citigroup*, 598 F.3d at 35 n.4).

19

Generally an alleged violation of a constitutional right creates a presumption of irreparable harm. *Jolly v. Coughlin*, 76 F.3d 468, 482 (2d Cir. 1996). However, when seeking prospective injunctive relief, the plaintiff must show a likelihood of either future harm or continuing harm. *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983); *see also Carver v. City of New York*, 621 F.3d 221, 228 (2d Cir. 2010). "Plaintiffs lack standing to pursue injunctive relief where they are unable to establish a 'real or immediate threat' of injury." *Nicosia v. Amazon.com, Inc* , 834 F.3d 220, 239 (2d Cir. 2016) (quoting *City of Los Angeles*, 461 U.S. at 111). Rather, a plaintiff seeking to satisfy the irreparable harm requirement must demonstrate that "absent a preliminary injunction [he or she] will suffer an injury that is neither remote nor speculative, but actual and imminent, and one that cannot be remedied if a court waits until the end of trial to resolve the harm." *Bisnews AFE (Thailand) Ltd. v. Aspen Research Group Ltd.*, 437 Fed. App'x 57, 58 (2d Cir. 2011) (quoting *Faiveley Transport Malmo AB v. Wabtec Corp.,* 559 F.3d 110, 118 (2d Cir. 2009)); *Garcia v. Arevalo*, No. 93-CV-8147, 1994 WL 383238, at *2 (S.D.N.Y. June 27, 1994) ("It is well settled that an allegation of the mere possibility of irreparable harm is insufficient to justify the drastic remedy of preliminary injunction. . . . A party who seeks the extraordinary remedy of a preliminary injunction must show the alleged irreparable harm to be imminent, not remote or speculative, and the alleged injury to constitute one that is incapable of being fully remedied by monetary damages.") (citations omitted). Here, the injunction sought is mandatory, and thus the court will use the "clear and substantial" showing of a likelihood of success standard.

In the motion, Plaintiff seeks injunctive relief against the "New York State Board of Examiners of Sex Offenders." *See* Compl. at 22. To the extent that Plaintiff seeks injunctive

relief against entities that are not defendants in this action, injunctive relief is available against non-parties only under very limited circumstances, none of which are present here. *See* Fed. R. Civ. P. 65(d)(2); *Doctor's Associates, Inc. v. Reinert & Duree, P.C.*, 191 F.3d 297, 302-03 (2d Cir. 1999); *United States v. Regan*, 858 F.2d 115, 120 (2d Cir. 1988); *see also In re Rationis Enterprises, Inc. of Panama*, 261 F.3d 264, 270 (2d Cir. 2001) ("A court may not grant a final, or even an interlocutory, injunction over a party over whom it does not have personal jurisdiction.").

Upon review, the Court finds that Plaintiff has failed to meet the heavy burden for a mandatory injunction. Plaintiff's belief that, at a later date, he will be denied good time credits, denied an Earned Eligibility Program Certificate, and assessed additional SORA points due to his failure to complete SOCTP, is speculative. Plaintiff's assumptions related to his parole conditions are not "foregone conclusions" and thus, he cannot demonstrate irreparable harm. *See Moore v. Peters*, 92 F. Supp. 3d 109 (W.D.N.Y. 2015) (denying request for injunction based upon claim that the plaintiff's parole would be revoked in the future).

The Court has found that the Complaint filed is insufficient and that an amended complaint must be filed for this action to proceed. Without a valid Complaint, Plaintiff can not possibly establish that he has a likelihood of success on the merits of his claims or sufficiently serious questions going to the merits and a balance of hardships tipping decidedly toward the party seeking injunctive relief.

Therefore, the Court denies Plaintiff's motion for preliminary injunctive relief without prejudice.

## VII. CONCLUSION

**WHEREFORE**, it is hereby

**ORDERED** that Plaintiff's in forma pauperis application (Dkt. No. 2) is **GRANTED**;[14] and it is further

**ORDERED** that the Clerk provide the Superintendent of the facility, designated by Plaintiff as his current location, with a copy of Plaintiff's authorization form, and notify the official that this action has been filed and that Plaintiff is required to pay the entire statutory filing fee of $350.00 pursuant to 28 U.S.C. § 1915[15]; and it is further

**ORDERED** that the Clerk of the Court provide a copy of Plaintiff's inmate authorization form to the Financial Deputy of the Clerk's Office; and it is further

**ORDERED** that if Plaintiff wishes to proceed with this action, he must file an Amended Complaint as set forth above **within thirty (30) days** from the date of the filing of this Decision and Order; and it is further

**ORDERED** that, if Plaintiff timely files an Amended Complaint, this matter be returned to the Court for further review; and it is further

**ORDERED** that if Plaintiff fails to timely file an Amended Complaint as directed above, the Clerk shall enter judgment indicating that the remainder of this action is **DISMISSED**

---

[14] Plaintiff should note that, although the Court has granted his application to proceed in forma pauperis, he will still be required to pay fees that he may incur in this action, including copying and/or witness fees.

[15] "28 U.S.C. § 1915 permits an indigent litigant to commence an action in a federal court without prepayment of the filing fee that would ordinarily be charged." *Cash v.Bernstein*, No. 09-CV-1922, 2010 WL 5185047, at *1 (S.D.N.Y. Oct. 26, 2010). "Although an indigent, incarcerated individual need not prepay the filing fee at the time of filing, he must subsequently pay the fee, to the extent he is able to do so, through periodic withdrawals from his inmate accounts." *Id.* (citing 28 U.S.C. § 1915(b) and *Harris v. City of New York*, 607 F.3d 18, 21 (2d Cir. 2010)).

**without prejudice** without further order of this Court pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted and for failure to comply with this Decision and Order.  In that event, the Clerk is directed to close this case; and it is further

    **ORDERED** that Plaintiff's motion for the appointment of counsel (Dkt. No. 4) is **DENIED with leave to renew**; and it is further

    **ORDERED** that Plaintiff's motion for a preliminary injunction (Dkt. No. 5) is **DENIED**; and it is further

    **ORDERED** that the Clerk serve a copy of this Decision and Order on Plaintiff, together with a copy of the original Complaint.


DATED: March 14, 2019

Thomas J. McAvoy
Senior, U.S. District Judge