UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

VLADIMIR KRULL,

                                    Plaintiff,

        v.                                                          9:19-CV-0142
                                                                     (TJM/CFH)

REBECCA OEY, et al.,

                                    Defendants.

_____

APPEARANCES:

VLADIMIR KRULL
17-R-0877
Plaintiff, Pro se
Clinton Correctional Facility
P.O. Box 2000
Dannemora, NY 12929

THOMAS J. MCAVOY
Senior United States District Judge

## DECISION AND ORDER

## I.      INTRODUCTION

        Plaintiff Vladimir Krull ("Plaintiff") commenced this pro se civil rights action by filing a

Complaint pursuant to 42 U.S.C. § 1983 ("Section 1983") asserting claims arising out of his

confinement in the custody of the New York State Department of Corrections and Community

Supervision ("DOCCS") at Clinton Correctional Facility ("Clinton C.F.").  Dkt. No. 1

("Compl.").  In the Complaint, Plaintiff identified the following individuals as defendants:

Senior Offender Rehabilitation Coordinator ("SORC") Rebecca Oey ("Oey"), Commissioner

1

Anthony J. Annucci ("Annucci"), DOCCS Director of Guidance and Counseling Megan MacTavish ("MacTavish"), and DOCCS Deputy Commissioner for Program Services Jeffrey McKoy ("McKoy"). *Id.* at 1-4. With the Complaint, Plaintiff also filed a motion for preliminary injunctive relief. Dkt. No. 8.

By Decision and Order filed March 14, 2019 (the "March Order"), this Court dismissed the Complaint in accordance with 28 U.S.C. § 1915(e) and 28 U.S.C. § 1915A and denied Plaintiff's motion for preliminary injunctive relief. Dkt. No. 9. In light of his pro se status, Plaintiff was afforded an opportunity to submit an amended pleading. *Id.* at 22-23.

Currently before the Court is Plaintiff's Amended Complaint and second motion for preliminary injunctive relief. Dkt. No. 12 ("Am. Compl.") and Dkt. No. 13.

## II.   LEGAL STANDARD

The legal standard governing the dismissal of a pleading for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) was discussed at length in the March Order and will not be restated here. *See* Dkt. No. 9 at 2-4. Taking into account Plaintiff's pro se status, the Court construes the allegations in the Amended Complaint with the utmost leniency. *See*, *e.g.*, *Haines v. Kerner*, 404 U.S. 519, 521 (1972) (holding that a pro se litigant's complaint is to be held "to less stringent standards than formal pleadings drafted by lawyers.").

## III.   SUMMARY OF AMENDED COMPLAINT[1]

---

[1]      The Amended Complaint includes exhibits. *See* Dkt. Nos. 12-1 and 12-2. Plaintiff also seeks to incorporate Dkt. No. 13-1 as an exhibit to the Complaint. *See* Am. Compl. at 2. To the extent that the exhibits are relevant to the incidents described in the Amended Complaint, the Court will consider the Amended Complaint as well as any documents attached as exhibits. *See Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991) (the complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference). Additionally, Plaintiff's original Complaint included exhibits. *See* Dkt. No. 1-1. In the Amended Complaint, Plaintiff incorporated, by reference, the same

In the Amended Complaint, Plaintiff identifies Oey and Annucci as defendants and

asserts new claims against a new defendant, ORC Mrs. Banker ("Banker").[2] *See* Am.

Compl. at 1-4.  The Amended Complaint does not include any claims against MacTavish or

McKoy.[3]  The facts are set forth as alleged by Plaintiff in his Amended Complaint.

In June 2017, ORC Banker asked Plaintiff to participate in the Sex Offender

Counseling and Treatment Program ("SOCTP") at Clinton C.F.[4]  Am. Compl. at 5.  Banker

told Plaintiff that if he refused to participate in the "voluntary program," he would receive a

disciplinary ticket, lose privileges, be placed in keeplock, and lose good time credits.  *Id*. at 7.

Additionally, Banker warned that Plaintiff could incur additional points under "Factor 12:

Acceptance of Responsibility" on his Sex Offender Registration Act ("SORA") Risk

Assessment Instrument ("RAI")[5].  Am. Compl. at 7.  Plaintiff currently scores a 65 on the

---

exhibits attached to the original Complaint, but failed to actually attach the exhibits to the Amended Complaint. "Although it is well settled that an amended complaint supersedes a prior complaint in its entirety, it is clear to the court that plaintiff intended to attach the exhibits to his amended complaint." *Wellington v. Langendorf*, No. 12-CV-1019 (FJS/DEP), 2013 WL 3753978, at *3 (N.D.N.Y. July 15, 2013).  To require Plaintiff to file an Amended Complaint that includes the original exhibits is, "an unnecessary procedural hoop that would waste resources and delay resolution of this action." *Alexander v. U.S.*, No. 13-CV-678, 2013 WL 4014539, at *4 (N.D.Cal. Aug. 5, 2013).  Because Plaintiff is proceeding pro se, the Court will consider the exhibits and documentation attached to the original Complaint as incorporated by reference in the Amended Complaint.

[2]       The Clerk of the Court is directed to add Banker to the docket report for this action.

[3]       The Clerk of the Court is directed to terminate MacTavish and McKoy as defendants.

[4]       In 2017, Plaintiff was convicted of second degree criminal sexual acts and rape.  *See* http://nysdoccslookup.doccs.ny.gov (last visited June 19, 2019).

[5]       A risk assessment instrument is prepared for each convicted sex offender subject to SORA and contains a series of factors relating to the offender's current offense, his criminal history, his post-offense behavior, and his release environment. *Doe v. Pataki*, 3 F. Supp. 2d 456, 461–62 (S.D.N.Y. 1998).  The RAI uses fifteen enumerated risk factors to tally the sex offender's risk factor score.  Factor 12:  Acceptance of Responsibility provides

> An offender who does not accept responsibility for his conduct or minimizes what occurred is a poor prospect for rehabilitation (Strate *et al*.1995;Byrum&Rogers 1993; Simkins *et al*.1989).  Such acknowledgement is critical, since an offender's ability to identify and modify the thoughts and behaviors that are proximal to his sexual misconduct is often a prerequisite

SORA RAI.  *Id.* at 22.  A score of 70 or below constitutes a Level One.  *Id.*

Plaintiff told Banker that he would not admit guilty to any crimes he was convicted of as he had testified, under oath, at this trial that he was innocent and "would continue to maintain his innocence."  Am. Compl. at 5.  Plaintiff agreed to attend classes because he was "assured" that his participation was not conditioned upon an admission of guilt to any crimes.  *Id.* at 5-6.  Plaintiff was classified as "low risk" and assigned to the six-month program.  *Id.*; Dkt. No. 1-1 at 2.

The SOCTP Guidelines in effect at the time Plaintiff participated in the program provided, in relevant part:

> Most often, an inmate's legal concerns are expressed in the context of the Fifth Amendment right to be free from compelled self-incrimination.  Accordingly, an inmate is not required to admit the commission of a particular crime, whether it resulted in the present commitment or not.  In order to permit open discussion for the most effective treatment, Department policy provides that no written or oral statement made by a program participant in conjunction with treatment services rendered in connection with the SOCTP may be used against the inmate in any subsequent criminal proceeding in accordance with the Limits of Confidentiality, Partial Waiver of

---

to stopping that misconduct (McGrath 1991).  The guidelines assess 10 points to an offender who has not accepted responsibility for his conduct and 15 points are assessed to an offender who has refused or been expelled from a sex offender program.  In scoring this category, the Board or court should examine the offender's most recent credible statements and should seek evidence of genuine acceptance of responsibility.  An offender who pleads guilty but tells his pre-sentence investigator that he did so only to escape a State prison sentence has not accepted responsibility.  The guidelines add five points if the offender has refused or been expelled from treatment since such conduct is powerful evidence of the offender's continued denial and his unwillingness to alter his behavior.  If an offender who has historically not accepted responsibility and historically has refused sex offender treatment but, subsequently participates in such programming, the Board or court should - seek to examine whether there is evidence of a genuine acceptance of responsibility.

*See* 2006 SORA Commentary and Guidelines at p. 15-16 (discussing Factor 12).

Confidentiality and Acknowledgment form. In addition, no program participant may reveal in any subsequent criminal proceeding any information disclosed by another inmate in any group session or otherwise disclosed in conjunction with counseling and treatment services rendered as part of the SOCTP.

For successful program participation, the inmate may discuss his or her behavior in general terms without providing the full names of victims, without disclosing the exact dates, times, and places (e.g., the city, town, etc.) of various sexual offending behavior, and without admitting to any specific crime or the violation of any specific section of the Penal Law (e.g., rape in the first degree, criminal sexual act in the third degree, sexual abuse in the second degree, etc.). Nonetheless, the inmate must openly and honestly discuss the behavior that resulted in his or her incarceration and/or referral to the program, demonstrate acceptance of responsibility for the conduct that resulted in his or her criminal conviction, and demonstrate an understanding of his or her sexual offending behavior and cycle of abuse.

Dkt. No. 1-1 at 27.

In January 2018, Plaintiff entered the program. Am. Compl. at 6. Plaintiff attended sessions three times a week, actively participated in group discussions, and completed all assignments. *Id*. at 6. On March 9, 2018 and May 2, 2018, Plaintiff met with Oey to evaluate his progress. *Id*. Plaintiff was told that he was making excellent progress and his written evaluation indicated that he "attends group and will participate when prompted. Continues to deny sex offense." Dkt. No. 1-1 at 3, 5. During the evaluations, Plaintiff and Oey discussed his crimes, including his arrest and conviction. Am. Compl. at 6. Plaintiff maintained his innocence and told Oey that he testified in his own defense at his trial. *Id*. at 6, 7; Dkt. No. 1-1 at 14-16. Oey did not tell Plaintiff that his refusal to admit guilt would be an impediment to completing the program. Am. Compl. at 6-7.

On June 18, 2018, Oey demanded that Plaintiff admit guilt or face expulsion from the

5

program, a loss of good time credits, and the assignment of points under "Factor 12." Am. Compl. at 7; Dkt. No. 1-1 at 8. Plaintiff reiterated to Oey that he was innocent. Am. Compl. at 7. When Plaintiff told Oey that SOCTP Guidelines did not require him to admit guilt, Oey responded, "You are wrong, you have to accept responsibility for your crimes." *Id*. On June 18, 2018, Oey issued a "Referral and Recommendation" indicating that Plaintiff was an "unsatisfactory" participant and failed to "respond favorable to treatment interventions." Dkt. No. 1-1 at 8. Plaintiff was removed him from the SOCTP. Am. Compl. at 8.

On April 23, 2019, Plaintiff appeared at a hearing before the Time Allowance Committee ("TAC") regarding his good time credits. Am. Compl. at 9. Plaintiff attempted to present evidence demonstrating that he maintained his innocence during his trial and explained the legal ramifications of falsely accepting responsibility for crimes that he did not commit. *Id.* In less than two minutes, the TAC rendered a decision denying Plaintiff all of his good time credits resulting in an additional "five plus" months of incarceration. *Id*.; Dkt. No. 13 at 8. The TAC informed Plaintiff that the decision was based upon his refusal to admit guilt or accept responsibility for his crimes. Am. Compl. at 9.

Construing the Amended Complaint liberally,[6] Plaintiff asserts the following: (1) Fourteenth Amendment procedural due process claim related to Plaintiff's SORA level; (2) vagueness challenge to the SOCTP Guidelines; (3) Fourteenth Amendment equal protection

---

[6]    The Court is mindful of the Second Circuit's instruction that a pleading by a pro se litigant must be construed liberally and interpreted to raise the strongest arguments that it suggests. *See, e.g., Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008) ("On occasions too numerous to count, we have reminded district courts" that a pro se plaintiff's pleadings must be construed liberally); *Phillips v. Girdich*, 408 F.3d 124, 130 (2d Cir. 2005) ("We leave it for the district court to determine what other claims, if any, [plaintiff] has raised. In so doing, the court's imagination should be limited only by [plaintiff's] factual allegations, not by the legal claims set out in his pleadings."); *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994) ("[W]e read [a pro se litigant's] supporting papers liberally, and will interpret them to raise the strongest arguments that they suggest.").

claims; and (4) Fifth Amendment claims. *See generally,* Am. Compl. Plaintiff seeks declaratory and injunctive relief. *See id.* at 39-41.

## IV. ANALYSIS

### A. Claims for Relief

Plaintiff seeks a permanent injunction enjoining Defendants from adding any points under "Factor 12" of the SORA RAI and from "enforcing the SOCTP requirements in any future SOCTP that Defendants order or recommend." *See* Am. Compl. at 41. Defendants are sued in their official capacity only. *See id.* at 2-4, 39-41.

The Eleventh Amendment has long been construed as barring a citizen from bringing a suit against his or her own state in federal court, under the fundamental principle of "sovereign immunity." U.S. Const. amend. XI ("The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."); *see also Idaho v. Coeur d'Alene Tribe of Idaho,* 521 U.S. 261, 267 (1997); *Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 100 (1984); *Hans v. Louisiana,* 134 U.S. 1, 10-21 (1890). Eleventh Amendment immunity is lost only if Congress unequivocally abrogates states' immunity or a state expressly consents to suit. *Gollomp v. Spitzer*, 568 F.3d 355, 365-66 (2d Cir. 2009). It is well-settled that Congress did not abrogate states' immunity through Section 1983, *see Quern v. Jordan*, 440 U.S. 332, 343-45 (1979), and that New York State has not waived its immunity from suit on the type of claims asserted in Plaintiff's Complaint. *See generally Trotman v. Palisades Interstate Park Comm'n*, 557 F.2d 35, 38-40 (2d Cir. 1977); *see also Dawkins v. State of New York*, No.

93-CV-1298 (RSP/GJD), 1996 WL 156764 at *2 (N.D.N.Y. 1996). Actions for damages against a state official in his or her official capacity are essentially actions against the state. *See Will v. Mich. Dep't. of State Police*, 491 U.S. 58, 71 (1989).

*In Ex Parte Young*, 209 U.S. 123 (1908), the Supreme Court established an exception to state sovereign immunity in federal actions where an individual brings an action seeking injunctive relief against a state official for an ongoing violation of law or the Constitution. Under this doctrine, a suit may proceed against a state official in his or her official capacity, notwithstanding the Eleventh Amendment, when a plaintiff "(a) alleges an ongoing violation of federal law and (b) seeks relief properly characterized as prospective." *See In re Deposit Ins. Agency*, 482 F.3d 612, 618 (2d Cir. 2007) (quotations and citations omitted); *see also Santiago v. New York State Dep't of Corr. Serv*., 945 F.2d 25, 32 (2d Cir. 1991) (holding that such claims, however, cannot be brought directly against the state, or a state agency, but only against state officials in their official capacities). "[I]n order to warrant the court's consideration, the plaintiff must be seeking prospective relief from an 'ongoing violation of federal law' which affects him directly, as opposed to others." *Ruggiero v. Brian Fischer, Comm'r, No.* 15-CV-00962, 2017 WL 6999859, at *2 (W.D.N.Y. Aug. 25, 2017), *report and recommendation adopted sub nom*., 2018 WL 488949 (W.D.N.Y. Jan. 20, 2018) (citations omitted). However, "[t]o be entitled to permanent injunctive relief from constitutional violation, [a] plaintiff must first establish the fact of the violation, and then demonstrate the presence of continuing irreparable injury if the injunction does not issue, and the lack of adequate remedy at law[.]" *Newman v. State of Ala*., 683 F.2d 1312 (11th Cir. 1982); *see also Inside Connect, Inc. v. Fischer*, No. 13-CV-1138, 2014 WL 2933221, at *7 (S.D.N.Y.

8

June 30, 2014) (dismissing the plaintiff's requests for declaratory judgment related to the defendants' policy of refusing delivery of Inmate News because the defendants were no longer refusing to deliver Inmate News) (citing *Green v. Mansour*, 474 U.S. 64, 68 (1985)).

While it is well settled that, in order to establish a defendant's individual liability in a suit brought under § 1983 for monetary damages, a plaintiff must show, *inter alia*, the defendant's personal involvement in the alleged constitutional deprivation, *Grullon v. City of New Haven*, 720 F.3d 133, 138 (2d Cir. 2013), "district courts in this Circuit have held 'that the personal involvement requirement does not apply to bar actions . . . pursuant to § 1983 for injunctive relief against a state official.' " *Nassau & Suffolk Cty. Taxi Owners Ass'n, Inc. v. State*, 336 F.Supp.3d 50, 68 (E.D.N.Y. 2018) (quoting *Marinaccio v. Boardman*, No. 1:02-CV-00831, 2005 WL 928631, at *9 (N.D.N.Y. Apr. 19, 2005)). However, "[u]nder *Ex parte Young*, the state officer against whom a suit is brought 'must have some connection with the enforcement of the act' that is in continued violation of federal law." *Daily Mart Convenience Stores, Inc. v. Nickel (In re Dairy Mart Convenience Stores, Inc.)*, 411 F.3d 367, 372–73 (2d Cir. 2005) (quoting *Ex Parte Young*, 209 U.S. at 154, 157)). "So long as there is such a connection, it is not necessary that the officer's enforcement duties be noted in the act." *Id*.

Here, Plaintiff has plead that Oey is no longer employed at Clinton C.F. as a SORC but rather, in an "unknown capacity" at DOCCS' "main building" in Albany. *See* Am. Compl. at 2-3. Plaintiff also alleges that Banker retired from DOCCS in late 2017. *See id.* at 4. Therefore, because an injunction against Oey and Banker would be "futile" in relation to the relief Plaintiff seeks, Plaintiff's claims against Oey and Banker are moot, and the Amended Complaint is dismissed as to these defendants. *McKethan v. New York State Dep't of Corr.*

9

*Servs.*, No. 10 CIV. 3826, 2012 WL 2367033, at *2 (S.D.N.Y. June 21, 2012) (finding that retiree has no ability to provide injunctive relief) (citing *Corr. Officers Benevolent Assoc. v. Kralik*, No. 04–CV–2199, 2009 WL 856395, at *8 (S.D.N.Y. Mar. 26, 2009) ("[B]ecause a defendant no longer occupied the position which he occupied at the time of the underlying events, and therefore did 'not have the official capacity necessary to enable him to comply with the injunctive relief sought,' he had to be dismissed from the case").

At this juncture however, Plaintiff has sufficiently alleged facts suggesting that Annucci has "a connection to, and [are] responsible for, the protection of Plaintiff's constitutional rights" as it relates to any claims that may survive initial review. *See Wright v. Stallone*, No. 9:17-CV-0487 (LEK/TWD), 2018 WL 671256, at *7 (N.D.N.Y. Jan. 31, 2018). Therefore, the Court addresses the merits of Plaintiff's constitutional claims below.

## B.     Fourteenth Amendment

### 1.     Due Process

In the original Complaint, Plaintiff claimed that his removal from the SOCTP would "infringe" upon his "constitutionally protected liberty interest in not being assigned a higher than appropriate SORA level." *See* Compl. at 17. In the March Order, the Court dismissed Plaintiff's due process claims reasoning

> Plaintiff claims that his removal will "also infringe" on his "constitutionally protected liberty interest in not being assigned a higher than appropriate SORA level." *See* Compl. at 17. Specifically, Plaintiff claims he will be classified as a "Level Two" sex offender rather than "Level One." *See id.* at 12. Because Plaintiff has not yet been assigned a SORA score, these due process claims are not ripe for adjudication. *See Peterson v. Reinke*, No. 1:14-CV-00477, 2017 WL 1138135, at *5 (D. Idaho Mar. 27, 2017) ("Plaintiff has not yet been deprived of a liberty interest, because he has not been required

to register as a sex offender, which potentially raises issues of standing or ripeness."); *see also Adams*, 2018 WL 4608216, at *6 (holding that the plaintiff did not have a cognizable liberty interest in good time credits that were not vested or that he had not yet earned).

Dkt. No. 9 at 12.

Plaintiff is still incarcerated at Clinton C.F. with a conditional release date of August 20, 2019. Am. Compl. at 41, Dkt. No. 13 at 9. Thus, from a procedural standpoint, a SORA hearing has not yet been held or scheduled. Nevertheless, Plaintiff argues that his due process claims are ripe for review because he has been removed from the SOCTP. *See* Am. Compl. at 18-20. Plaintiff reasons that, as a result of his refusal to "accept responsibility" and his expulsion from the SOCTP, he is "threatened with" and "faces" a "mandatory and non-discretionary" Factor 12 increase in his SORA RAI. *See id.;* Dkt. No. 12-2 at 25-28; Dkt. No. 13-1 at 8-9. Plaintiff contends that it is a foregone conclusion that an increase in his SORA RAI will result in an assignment of a Level Two SORA Risk Level rather than a Level One.[7] Am. Compl. at 22.

Within 60 days prior to the release of a sex offender, DOCCS notifies the Board of Examiners of Sex Offenders ("The Board"). *Doe v Pataki*, 3 F.Supp.2d 456, 462 (S.D.N.Y. 1998). The Board "assesses the risk of repeat sex offense and the threat to public safety and shall make a recommendation which is subject to judicial review." *U.S. v. Springer*, No. 5:09-CR-571 (NAM), 2010 WL 11508647, at *2 (N.D.N.Y. Mar. 31, 2010) (citing N.Y. Correction Law § 168-l). The Board completes the RAI by assigning points for each relevant factor contained in the Guidelines, drafts a case summary, and makes a risk level

---

[7]      Level Two mandates lifetime registration and community notification with Plaintiff's photograph and address posted on the internet. *See* Am. Compl. at 22.

recommendation.  *Doe*, 3 F.Supp.2d at 462.  The recommendation is presented to the court

for a "SORA Hearing" and the defendant's risk level is then adjudicated.  *Id*.; *People v.*

*Mingo*, 12 N.Y.3d 563, 571, n. 2 (2009) ("A risk assessment instrument is prepared by the

District Attorney or the Board of Examiners of Sex Offenders to assist the [SORA] court in its

classification of the risk defendant poses to the community.").  At the proceeding, which is

civil in nature, the court "determines the risk of reoffense by a person convicted of a

qualifying sex offense and requires that individual to register with law enforcement officials

according to that risk level."  *People v. Pettigrew*, 14 N.Y.3d 406, 408 (2010).  At the hearing,

"the People must prove the facts to support a SORA risk-level classification by clear and

convincing evidence."  *People v. Howard*, 27 N.Y.3d 337, 341 (2016) (citing Corr. Law. §

168); *Pettigrew*, 14 N.Y.3d at 408 (citation omitted).  The court shall make its determination

"thirty calendar days prior to [the offender's] discharge, parole or release."  *See* Corr. Law

168-n(2).

    A SORA court is not required to accept the Board's recommendation as to the

appropriate risk classification of a sex offender.  *Yunus v. Robinson*, No. 17-CV-5839, 2018

WL 3455408, at *2 (S.D.N.Y. June 29, 2018), *report and recommendation adopted*, 2019 WL

168544 (S.D.N.Y. Jan. 11, 2019) (citing New York Corr. Law § 168).  "[T]he level suggested

by the RAI is merely presumptive and a SORA court possesses the discretion to impose a

lower or higher risk level if it concludes that the factors in the RAI do not result in an

appropriate designation."  *Mingo*, 12 N.Y.3d at 568, n. 2; *see also People v. Sincerbeaux*, 27

N.Y.3d 683, 689, n.3 (2016) ("A court may depart from the presumptive risk level, not from

points that are properly assigned within a specific risk factor.").

The SORA court may, in its discretion, consider mitigating factors with respect to Factor 12 and a request for a downward departure. *See People v. Kearns*, 68 A.D.3d 1713, 1714 (2009) (finding that the court improvidently exercised its discretion in determining that defendant was not entitled to a downward departure from risk Factor 12); *see also People v. Banks*, 48 A.D.3d 656, 656 (2008) (holding that the People did not present clear and convincing evidence to support a 15–point assessment for risk factor 12 [acceptance of responsibility] of the risk assessment instrument). A defendant seeking a "downward departure" from the presumptive risk level has the initial burden of "(1) identifying, as a matter of law, an appropriate mitigating factor, namely, a factor which tends to establish a lower likelihood of reoffense or danger to the community and is of a kind, or to a degree, that is otherwise not adequately taken into account by the SORA Guidelines; and (2) establishing the facts in support of its existence by a preponderance of the evidence." *People v. Wyatt*, 89 A.D.3d 112, 128 (2d Dep't 2011). While "[t]he risk assessment guidelines do not authorize a reduction of points under risk factor 12 based on a defendant's reasons for not accepting responsibility," a defendant's explanation is relevant to a request for a downward departure from the presumptive risk level. *People v. Stepney*, 47 Misc. 3d 20, 23 (N.Y. App. Term. 2015) (citing *People v. Smith*, 78 A.D.3d 917, 918–919 (2010) ).

Upon review of the SORA Guidelines and the applicable caselaw, the Court is not persuaded by Plaintiff's arguments. Because the SORA hearing has not been held and Plaintiff has not yet been assigned a SORA level, *see* Am. Compl. at 18, Plaintiff's due process claim is not ripe for review. Plaintiff has not plead the deprivation of a liberty interest and thus, for the reasons set forth herein and in the March Order, Plaintiff's Fourteenth

Amendment due process claim is dismissed.

### 2. Vagueness

Courts in the Second Circuit have recognized due process vagueness challenges to prison disciplinary rules and directives. *See Chatin v. Coombe*, 186 F.3d 82, 88-89 (2d Cir. 1999). A rule "is unconstitutionally vague if persons of common intelligence must necessarily guess at its meaning and differ as to its application, or if it fails to give a person of ordinary intelligence fair notice of conduct proscribed or required by the regulation and encourages arbitrary and erratic behavior on the part of the officials charged with enforcing the rule." *Booker v. Maly*, No. 9:12-CV-246 (NAM/ATB), 2014 WL 1289579, at *7 (N.D.N.Y. Mar. 31, 2014) (citations omitted), *aff'd*, 590 F. App'x 82 (2d Cir. 2015).

In the Amended Complaint, Plaintiff claims that "a person of ordinary intelligence" is unable to reconcile "accepting responsibility for a crime" and "admitting to the commission of a crime." *See* Am. Compl. at 25-27.

As a result of a 2008 class action settlement in *Donahuser v. Goord*, No. 01-CV-1535 (DNH), Settlement Agreement, Dkt. No. 184 (N.D.N.Y. March 13, 2018), upon admission of any inmate into any SOCTP, DOCCS provides a "Limits of Confidentiality, Partial Waiver of Confidentiality and Acknowledgement" form ("the Waiver").[8] *See VanGorder v. Lira*, No.

---

[8]     The waiver provides, in pertinent part:

> I understand that the primary purpose of the program is to reduce the likelihood of re-offending by assisting me to control my chain of behaviors that lead to sexual offending. I also understand that I am not required to admit the commission of a particular crime, whether it resulted in the present commitment or not. Rather, for successful program participation, I may discuss my behavior in general terms without providing the full names of victims, without disclosing the exact dates, times, and places of various sexual offending behavior, and without admitting to any specific crime or the violation of any specific section of the Penal Law. Nonetheless, I must openly and honestly discuss the behavior that resulted in my criminal conviction, incarceration, and referral to the program along with any other history of sexual offending behavior. This is to include the individual thoughts and feelings associated with that

14

9:08-CV-281 (NAM/ATB), 2010 WL 1235283, at *1, n. 1 (N.D.N.Y. Mar. 30, 2010). The Waiver has been incorporated into the SOCTP Guidelines as "Attachment 5."[9] Citing to the Waiver, courts have rejected the argument that the successful completion of the SOCTP depends upon an inmate's admission of crimes for which he claims not to have engaged in. *See Griffin v. Alexander*, No. 9:09-CV-1334 (TJM/DEP), 2011 WL 4402119, at *10 (N.D.N.Y. Aug. 25, 2011), *report and recommendation adopted*, 2011 WL 4343199 (N.D.N.Y. Sept. 14, 2011), *aff'd*, 466 F. App'x 26 (2d Cir. 2012) ("Participants in the sex offender treatment program are not required to confess to any particular offense or act of abuse. All that is required is that participants discuss the behavior that resulted in incarceration.").

In the Amended Complaint, Plaintiff does not claim that he was not presented with the Waiver and, indeed, he does not address the Waiver in his Amended Complaint. Upon review of the Guidelines and relevant caselaw, the Court finds that the Guidelines sufficiently notifies a person of ordinary intelligence that he or she is not required to admit the commission of a particular crime and is not so indefinite that it encourages arbitrary and selective enforcement. Consequently, the Court rejects Plaintiff's contention that the SOCTP Guidelines are unconstitutional under the Due Process Clause and void for vagueness.

### 3. Equal Protection

The law related to Fourteenth Amendment equal protection claims was discussed in

---

behavior and demonstration of acceptance of responsibility for the behavior and an understanding of my sexual offending cycle of abuse.

*See* http://www.doccs.ny.gov/ProgramServices/SOCTP_Procedures_and_Guidelines.pdf (last visited June 19, 2019).

[9] *See* http://www.doccs.ny.gov/ProgramServices/SOCTP_Procedures_and_Guidelines.pdf (last visited June 19, 2019).

the March Order and will not be restated herein.  *See* Dkt. No. 9 at 15-16.  In the March

Order, the Court dismissed the equal protection claims due to Plaintiff's failure to identify

similarly situated inmates who were treated differently.  *See id.* at 15.

In the Amended Complaint, Plaintiff attempts to correct the deficiency in the prior

pleading and alleges that he is similarly situated to non-sex offenders, convicted of violent

felonies, serving determinate sentences.  *See* Am. Compl. at 30-31.  Although Plaintiff

concedes that he is not <u>identically</u> situated to this group, he asserts that he is <u>similarly</u>

situated because the non-sex offenders live in the same housing block, share counselors,

eat at the same mess hall, exercise in the same yard, work the same job assignments,

attend the same services and programming, receive visitors in the same area, wear the same

clothing, and are subject to the same disciplinary rules.  *See id.* at 30.

Despite being afforded an opportunity to amend, the equal protection claims are

subject to dismissal.  "[B]ecause sex offenders and non-sex offenders, by definition, are not

convicted of the same conduct," as presently plead, Plaintiff has not demonstrated that he

was treated differently from other inmates convicted under similar circumstances to establish

an equal protection claim.  *Haines v. Archuleta*, No. 13-CV-01897, 2013 WL 6658767, at *5

(D. Colo. Dec. 17, 2013); *see also People v. Oglethorpe*, 87 P.3d 129, 132 (Colo. App.

2003), as *modified on denial of reh'g* (Aug. 14, 2003) (dismissing the plaintiff's argument that

the Colorado Sex Offender Lifetime Supervision Act violates equal protection because it

punishes all sex offenders more severely than non-sex offenders who commit murder or

assault)*; see also Cremeans v. Wrenn*, No. 17-CV-572, 2019 WL 1406563, at *8 (D.N.H.

Mar. 28, 2019) (finding that the claim that non-sex offenders are treated differently than sex

offenders "does not suffice to allow the court to find that [the plaintiff] was treated differently than others similarly situated in all relevant aspects") (citation omitted). While Plaintiff claims that his conditions of confinement are similar to non-sex offenders, Plaintiff has not claimed any similarity with criminal records and history, crimes with similar degrees of violence, sentences, institutional records, or behavioral history. *See Stevenson v. Louisiana Bd. of Parole*, 265 F.3d 1060 (5th Cir. 2001).

Accordingly, for the reasons set forth herein and in the March Order, Plaintiff's Fourteenth Amendment equal protection claims are dismissed for failure to state a claim.

## C. Fifth Amendment

The Supreme Court has held that compelling an individual to testify while threatening to impose penalties "capable of forcing the self-incrimination," violates the Fifth Amendment. *Minnesota v. Murphy*, 465 U.S. 420, 434 (1984). In *McKune v. Lile*, 536 U.S. 24 (2002), the Supreme Court discussed the issue of the Fifth Amendment protection against self-incrimination and compulsion in relation to the rights of sex offenders participating in treatment programs. As discussed in the March Order

> The issue of whether the Fifth Amendment privilege is violated by a prison SOTP requiring participants to admit responsibility has been addressed by the Supreme Court in *McKune v. Lile*, 536 U.S. 24, 30 (2002). In *McKune*, the Court held that the compulsion element of a self-incrimination claim was not violated because the penalty faced by inmates that failed to cooperate with the program, i.e., transfer to a less desirable unit, was not "atypical and significant hardships." *Id.* at 37-38 (citing *Sandin v. Conner*, 515 U.S. 472, 484 (1995) ).

Dkt. No. 9 at 9.

Writing for a plurality of the Court in *McKune*, Justice Kennedy concluded that the

17

setting in which the compulsion arises is an integral part of the constitutional analysis. *McKune*, 536 U.S. at 36 ("The fact that these consequences are imposed on prisoners, rather than ordinary citizens, moreover, is important in weighing respondent's constitutional claim.").  Noting that "[a] broad range of choices that might infringe constitutional rights in free society fall within the expected conditions of confinement of those who have suffered a lawful conviction," *id*., Justice Kennedy concluded that the "atypical and significant hardship" analysis articulated in *Sandin v. Connor*, 515 U.S. 472 (1995) "provides a reasonable means of assessing whether the response of prison administrators to correctional and rehabilitative necessities are so out of the ordinary that one could sensibly say they rise to the level of unconstitutional compulsion." *McKune*, 536 U.S. at 41.  Concurring with the judgment reached by the *McKune* plurality, that withholding certain privileges upon an inmate's refusal to participate in a mandatory sex offender treatment program does not constitute a compulsion that encumbers the constitutional right not to incriminate oneself, Justice O'Connor wrote separately to express her opinion that the Fifth Amendment compulsion standard is broader than *Sandin*' s "atypical and significant hardship" standard. *Id*. at 48 (O'Connor, J., concurring).  "[E]xamples of penalties 'that strike at the core of an inmate's recognized entitlements, that threaten his bodily safety, or that impose additional punishment beyond that already imposed by fair judicial process' would be impermissible under the Fifth Amendment." *Mouton v. Kelley*, No. 5:18-CV-00306, 2019 WL 1497044, at *10 (E.D. Ark. Mar. 18, 2019), *report and recommendation adopted*, 2019 WL 1495261 (E.D. Ark. Apr. 4, 2019) (citing *Roman v. DiGugielmo*, 675 F.3d 204, 214 (3rd Cir. 2012)).

In the Amended Complaint, Plaintiff claims that his refusal to accept responsibility for

crimes that he did not commit will result in severe and significant penalties amounting to compulsion including: (1) "the real possibility of perjury prosecution;" (2) "five plus" months of incarceration due to the revocation of good time credits; and (3) the assignment of additional SORA RAI points resulting in "a lifetime of substantial restrictions on his liberty" because he will be categorized as a Level 2 sex offender. *See generally*, Dkt. No. 12-2.

In the March Order, the Court dismissed Plaintiff's Fifth Amendment claims holding

> Here, Plaintiff exercised his right to refuse to admit responsibility. In the Complaint, he does not plead that he admitted guilt, and does not allege that he was ever placed under oath or "exposed to" perjury charges. Accordingly, the Court finds that Plaintiff's constitutional rights were not violated because he did not make any statement during the program that was actually used against him at a later criminal proceeding. *See Adams v. Annucci*, No. 17-CV-3794, 2018 WL 4608216, at *9 (S.D.N.Y. Sept. 25, 2018) (holding that because the plaintiff was "faced only with the choice between forgoing the potential for an earlier Conditional Release date through accumulation of Good Time Credits - something which he is not constitutionally entitled - or admitting responsibility only for this crime of conviction, his Fifth Amendment rights were not violated"); *see also Mitchner v. Shelton*, No. 07-3173, 2009 WL 274224, at *3 (D. Kan. Jan. 26, 2009) (dismissing Fifth Amendment claims; the plaintiff was terminated from the program because he "would not be coerced to" admit guilt while his criminal appeal was pending).

Dkt. No. 9 at .

In the Amended Complaint, Plaintiff argues that if he accepted responsibility for crimes, his statements would be used "in his pending direct appeal" or any future CPL § 440.10, writ of error coram nobis, habeas corpus, or CPLR Article 78 proceeding." *See id.* at 13, 15, 23, 25. Plaintiff's vague references to appeals and possible future proceedings are not supported by any facts or specific information related to any pending appeals or legal claims. Thus, the possibility of any statements made during sex offender treatment being

used against him, is purely speculative and remote. *See DeFoy v. McCullough*, 301 Fed. App'x 177, 182 (3d Cir. 2008) (dismissing Fifth Amendment claim reasoning that the possibility of perjury was "not serious enough to constitute Fifth Amendment compulsion"); *but cf. Reinhardt v. Kopcow*, 66 F.Supp.3d 1348, 1356–57 (D. Colo. 2014) (allowing the plaintiffs to proceed with Fifth Amendment claims related to sex offender treatment because the plaintiffs bringing the claims "are those whose direct appeals are still pending").

With respect to the revocation of good time credits, although *McKune* did not involve a denial of good time credits, courts have found that risking the loss of good time credits or jeopardizing the chance for parole does not give rise to a Fifth Amendment self-incrimination claim. *See McChesney v. Hogan*, No. 08-CV-1186 (NAM/DEP), 2010 WL 1027443, at *7 (N.D.N.Y. Feb. 26, 2010) ("[i]t is by now fairly well settled that risking the loss of good time credits or jeopardizing the chance for parole, alone, does not qualify as sufficiently compulsive to meet the test"); *see also Sayles v. Fischer*, No. 08-CV-0747, 2011 WL 1199834, at *4 (W.D.N.Y. Mar. 29, 2011) (collecting cases).

Finally, as discussed *supra*, Plaintiff is presently incarcerated and thus, his SORA hearing has not been held or scheduled. Thus, Plaintiff's SORA RAI has not been completed and he has not yet been assigned a SORA level. *See* Am. Compl. at 18. The mere threat of an increase in his SORA RAI and SORA Level, in response to Plaintiff's refusal to participate in sex offender treatment, "is not a consequence serious enough to compel him to be a witness against himself in violation of the Fifth Amendment." *See Entzi v. Redmann*, 485 F.3d 998, 1002 (8th Cir. 2007) (holding that "the mere filing of a petition to revoke probation, in response to [the plaintiff's] refusal to participate in sex offender treatment, is not a

consequence serious enough to compel him to be a witness against himself in violation of the Fifth Amendment") (citing *McKune*, 536 U.S. at 36–42 (plurality opinion); *id*. at 50–51 (O'Connor, J., concurring in the judgment). Plaintiff's sentence has not been extended and his conditions of confinement have not been altered. *See Roman v. DiGuglielmo*, 675 F.3d 204, 215 (3d Cir. 2012) (dismissing Fifth Amendment claim based upon denial of parole reasoning that "the nature of the penalty in this case is in no way suggestive of the 'stark[ ] . . . government attempts to compel testimony' relied on by previous cases in fleshing out the scope of the Fifth Amendment."). For the reasons set forth herein and in the March Order, Plaintiff's Fifth Amendment claims are dismissed.

## IV.     MOTION FOR PRELIMINARY INJUNCTION[10]

Plaintiff renews his motion for an order enjoining Defendants from adding points to his SORA RAI and seeks a further Order restoring his good time credits that were denied on April 23, 2019. *See* Am. Compl. at 39; *see generally* Dkt. No. 13.

The Court has found that the Amended Complaint filed by Plaintiff fails to state any claims. Without a valid pleading, Plaintiff can not possibly establish that he has a likelihood of success on the merits of his claims or sufficiently serious questions going to the merits and a balance of hardships tipping decidedly toward the party seeking injunctive relief. Therefore, the Court denies Plaintiff's motion for preliminary injunctive relief.

## V.      CONCLUSION

**WHEREFORE**, it is hereby

**ORDERED**, that the Amended Complaint (Dkt. No. 12), and all exhibits annexed (Dkt.

---

[10]     The law related to motions for preliminary injunctive relief was discussed in the March Order and will not be restated herein. *See* Dkt. No. 9 at 19-20.

Nos. 1-1, 12-1, and 13-1) thereto is accepted for filing and is deemed the operative pleading; and it is further

**ORDERED** that the Clerk of the Court shall amend the docket to include Banker as a defendant herein and to terminate MacTavish and McKoy as defendants; and it is further

**ORDERED** that Plaintiff's claims are **DISMISSED** pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted; and it is further

**ORDERED** that Plaintiff's motion for preliminary injunctive relief (Dkt. No. 13) is **DENIED**; and it is further

**ORDERED** that the Clerk is directed to close this case; and it is further

**ORDERED** that the Clerk serve a copy of this Decision and Order on Plaintiff.


Dated: June 24, 2019




Thomas J. McAvoy
Senior, U.S. District Judge